**Robert L. BIGSBY and Evelyn Bigsby, Plaintiffs,**

v.

**Marvin T. RUNYON, Postmaster General; United States Postal Service; and National Rural Letter Carriers Association, Defendants.**

Civil Action No. 1:94CV278–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

May 9, 1996.

Opinion on Subsequent Motions
Nov. 21, 1996.

which would have given him a significant advantage over his non-disabled classmates.

Felicia C. Adams, U.S. Attorney's Office, Oxford, MS, Nancy Ellen Zusman, U.S. Department of Justice, Office of U.S. Attorney, Milwaukee, WI, Phillip Eglsaer, U.S. Postal Service, Memphis, TN, for Defendants United States Postal Service.

John L. Maxey, II, Jackson, MS, William B. Peer, Washington, DC, Bernard O. Westler, Milwaukee, WI, for National Rural Letter Carrier's Association.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Now before the court are various motions of the parties. The *pro se* plaintiffs in this case have moved the court for leave to file a motion for summary judgment out of time, for the entry of summary judgment on their behalf, for a hearing on the merits of their motion for summary judgment, and for the appointment of a special master to hear this cause. The defendant National Rural Letter Carriers Association ("NRLCA"), in turn, has moved the court to partially strike the plaintiffs' demand for a jury trial, and to dismiss, or in the alternative for summary judgment, on the plaintiffs' claims against them. The postal defendants, United States Postal Service ("USPS") and Marvin T. Runyon, have also filed a Motion to Dismiss, or in the Alternative for Summary Judgment.

## I. THE PLAINTIFFS' CLAIMS

As with the undersigned's latest encounter with Robert Bigsby,[1] the factual background of this cause is too colossal to describe in any detail here. Any attempt to do so would unduly burden this court. When particular facts are necessary for the discussion of the plaintiffs' claims, the court will provide them.

All of the plaintiffs' claims in this case arise out of a negotiated settlement agreement (hereinafter "settlement agreement") arguably reached between the plaintiff Robert Bigsby, the defendant USPS and the defendant NRLCA. The terms of the settlement were essentially straightforward. In exchange for Mr. Bigsby's withdrawal of cer-

---

**1.** *Bigsby v. Runyon,* Civil Action No. 3:92cv13–D–D (N.D.Miss. Dec. 24, 1995) (Davidson, J.) (Memorandum Opinion and Order Granting Motions for Summary Judgment).

tain grievances and requests for arbitration in connection with his impending termination of employment with the Postal Service, the USPS essentially agreed to:

1. not terminate Mr. Bigsby from his employment with the Postal Service;
2. transfer Mr. Bigsby from his rural letter carrier position in Mississippi to an "Electronics Technician" position in Oshkosh, Wisconsin; and
3. give Mr. Bigsby $16,718.31 as backpay.

The parties are in dispute as to Mr. Bigsby's disposition with regard to this settlement agreement, and it is his position that this agreement was forced upon him by his NRLCA representative without his consent. In any event, it appears undisputed that he accepted the $16,718.31 and relocated to Oshkosh to accept the offered position, where he presumably is still employed with the Postal Service as an electronics technician.

The plaintiffs originally filed this particular action on April 14, 1994 in the United States District Court for the Eastern District of Wisconsin. The Bigsbys charged in that complaint that the actions of the defendants surrounding this settlement constituted breach of contract, breach of the duty of fair representation and reprisal discrimination under Title VII of the Civil Rights Act.[2] United States District Judge Terrance T. Evans, Chief Judge for the Eastern District of Wisconsin, presided over the case. Upon consideration of the defendants' motion to dismiss or transfer, Chief Judge Evans dismissed all of the plaintiffs' Title VII claims for lack of jurisdiction by order dated September 13, 1994. *Bigsby v. Runyon,* Civil Action No. 94–C–407 (E.D.Wis. Sept. 14, 1994) (Evans, C.J.) (Order Dismissing Title VII claims and Transferring Cause to the Northern District of Mississippi). With those claims dismissed, Chief Judge Evans transferred, in that same order, the case and its remaining claims to this District for possible consolidation with Mr. Bigsby's then-pending action before this court. Consolida-

tion never occurred, however, and Mr. Bigsby's other litigation before this court ended when the undersigned dismissed all of his claims in that case by order dated December 5, 1994. Mr. Bigsby appealed that decision to the Fifth Circuit, which affirmed this court's order on November 29, 1995.

The court finds that the motions of the defendants to dismiss or for summary judgment are well taken and shall be granted. The motions of the plaintiffs in this cause are not well taken and shall be denied. There are no genuine issues of material fact as to the case at bar, and the defendants are entitled to the entry of a judgment as a matter of law. Most of the plaintiffs' claims are properly dismissed for multiple reasons, as set out below.

## II. PLAINTIFFS' TITLE VII CLAIMS

### 1. "LAW OF THE CASE" DOCTRINE

As already noted by the court, all of the plaintiffs' claims arising under Title VII were dismissed from this action while it was still pending in the Eastern District of Wisconsin. Chief Judge Evans' order was based upon a lack of jurisdiction because the plaintiffs had not obtained a "right to sue" letter from the EEOC. *See Tolbert v. United States,* 916 F.2d 245, 247 (5th Cir.1990) (stating failure to comply with exhaustion requirement in Title VII claims deprives court of subject matter jurisdiction). Indeed, the Chief Judge noted in his order that "Mr. Bigsby says that his Title VII claim is not ripe because he does not have a notice of right to sue.... On the basis of Mr. Bigsby's representation regarding his Title VII claim, that claim is dismissed."

Generally, "when a court decides upon a rule of law that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 814, 108 S.Ct. 2166, 2177, 100 L.Ed.2d

---

2. In their complaint, the plaintiffs also listed numerous Title VII claims of discrimination which were then currently pending before the undersigned in *Bigsby v. Runyon,* Civil Action No. 3:92cv13–D–D. It does not appear to the court that the complaint seeks to state these

claims again in this action, but rather notes that the claims were in fact filed and are the asserted basis of reprisal discrimination by the defendants. In the interest of completeness, however, the court will address those claims as if they have indeed been reasserted in this action.

811 (1988). This is known as the "law of the case" doctrine which was developed to "maintain consistency and avoid [needless] reconsideration of matters once decided during the course of a single continuing lawsuit." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478 at 788 (1981). This principle applies equally to the court's own decisions as well as the decisions of a coordinate court. *Christianson*, 486 U.S. at 814, 108 S.Ct. at 2176–77. However, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although it 'should be loathe to do so in the absence of extraordinary circumstances....'" *Id.* (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). The Fifth Circuit has held that there are three extraordinary circumstances that allow this court to revisit an issue previously decided by a coordinate court. This court will not reexamine unless "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work manifest injustice." *Royal Ins. Co. v. Quinn–L Capital Corp.*, 3 F.3d 877, 880 (5th Cir.1993); *North Miss. Communications v. Jones*, 951 F.2d 652, 656 (5th Cir.), *cert. denied*, 506 U.S. 863, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992). None of the exceptions apply in this case, and the plaintiffs have offered no evidence that would even warrant the attention of this court to reconsider Chief Judge Evans' order of September 13, 1994.

## 2. THIS COURT'S JURISDICTION

Even if the undersigned were to reconsider the dismissal of the Title VII claims, the decision would remain unchanged. To this date, the plaintiffs have failed to produce an appropriate "right to sue" letter issued by the EEOC on their reprisal claim. Mr. Bigsby contends that he is not required to obtain a "right to sue" letter for a claim of reprisal discrimination, and directs this court's attention to the decision of *Gupta v. East Tex. State Univ.*, 654 F.2d 411 (5th Cir.1981). Mr. Bigsby is indeed correct to the extent that, at least within the Fifth Circuit, a plaintiff who has Title VII discrimination claims properly pending before a district court need not obtain a "right to sue" letter to return to that court and charge retaliation for the filing of the original claims. *Gottlieb v. Tulane Univ. of La.*, 809 F.2d 278, 284 (5th Cir.1987); *Gupta*, 654 F.2d at 414; *Ryman v. Office & Professional Emp. Intern. Union*, 628 F.Supp. 421, 429 (E.D.Tex. 1985). However, the undersigned notes that none of Mr. Bigsby's original EEOC complaints were properly before this court. All of his Title VII claims were dismissed by this court's order as not properly before the court, and all of them suffered from procedural infirmities in addition to lack of substantive merit. Because this court never possessed jurisdiction over Mr. Bigsby's original EEOC claims, it cannot use those claims to exercise ancillary jurisdiction over his current claim of retaliation as discussed in *Gupta*.

## 3. *RES JUDICATA* and COLLATERAL ESTOPPEL

To the extent that the Bigsbys seek to relitigate any of Mr. Bigsby's claims, Title VII or otherwise, asserted in his prior action before this court, those claims are properly dismissed from this action. This court's order of December 6, 1994, dismissed all of those claims, and the Fifth Circuit affirmed that order on November 29, 1995. Mr. Bigsby is precluded from relitigating any claims dismissed under that action by virtue of the doctrine of *res judicata*, and Ms. Bigsby is likewise precluded by the doctrine of collateral estoppel. *See RecoverEdge v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir.1995) (discussing federal requirements for collateral estoppel); *Travelers Ins. Co. v. St. Jude Hosp.*, 37 F.3d 193, 195 (5th Cir.1994) (discussing federal requirements for application of *res judicata*).

## 4. MERITS OF THE CLAIMS

As to all of the plaintiffs' Title VII claims which were addressed in this court's Opinion and Order of December 6, 1994, the undersigned again finds that they are without substantive merit. The plaintiff has offered no evidence to support those claims

which are sufficient to survive a motion for summary judgment. Likewise, the court finds that his reprisal claim in this case is also without substantive merit. Other than the fact that Mr. Bigsby did in fact pursue Title VII claims against these defendants, and that this settlement agreement was reached with regard to other claims, the plaintiffs can produce no admissible evidence that would lead a reasonable juror to believe that Mr. Bigsby was discriminated against in violation of Title VII.

## III. BREACH OF CONTRACT AND BREACH OF THE DUTY OF FAIR REPRESENTATION

### 1. ACCORD AND SATISFACTION

■ The most obvious reason that the Bigsbys cannot challenge the settlement agreement derives from a fundamental premise of contract law—the doctrine of accord and satisfaction. *See generally*, 1 Am.Jur.2d *Accord and Satisfaction* (1994); *Alexander v. Tri–County Co-op*, 609 So.2d 401, 404 (Miss. 1992) (explaining elements of accord and satisfaction under Mississippi law). A party such as Mr. Bigsby cannot accept the benefits of a settlement contract and then later challenge its validity. Mr. Bigsby states that relocation and acceptance of the ET–9 position in Oshkosh was the product of coercion by the defendants, because the Postal Service told him "Should Mr. Bigsby fail to report for duty by November 8, 1993, the Postal Service is relieved of all employment obligations to him." The plaintiffs take this as coercive, because "[i]n other words, if the Plaintiff did not take the position in Oshkosh, he would be terminated." Mr. Bigsby appears to forget that without the settlement agreement he seeks to challenge, he was already terminated from his employment with the Postal Service. Indeed, the reason the parties attended arbitration at the time was because of the "Notice of Removal" Mr. Bigsby had received on April 16, 1993. He found himself in no worse a scenario than before acceptance of the agreement's terms.

In any event, relocation and acceptance of the ET–9 position was not the only term of the agreement. Not only did Mr. Bigsby move to Oshkosh and continue his employment with the Postal Service as an Electronics Technician, he accepted payment of the $16,718.31 of backpay as contemplated in the settlement agreement. Had he wished to challenge the agreement as dispositive of his claims then pending in arbitration, he should have refused acceptance of the $16,718.31 and declined to move to Oshkosh and accept the ET–9 position. He would have then been free to pursue the available remedies to which he would have been entitled. Instead, he chose to accept the benefits of the settlement agreement **after he knew of the terms to which he now objects.** Mr. Bigsby has made his bed out of this settlement agreement, and now he must lay in it. The plaintiffs have offered no discernable evidence of "coercion" on the part of the defendants in this matter, for the "threat" of termination from his employment with the Postal Service was no different from his impending termination before the settlement was reached.

### 2. MERITS OF THE CLAIMS

The plaintiffs agree that at least a tentative settlement agreement had been reached on October 13, 1993, but that:

[e]verything abruptly changed on October 18, 1993 however, when the NRLCA allowed the USPS to change their previously agreed upon settlement from "The Postal Service agrees to ALLOW the Grievant (Plaintiff) to transfer ..." [to a job in Oshkosh,] to: "Should Mr. Bigsby fail to report for duty on November 8, 1993 the Postal Service is relieved of all employment obligations to him."

As the Plaintiff's attorney explained it, after conversing with the Defendants attorneys, if the Plaintiff did not go to Oshkosh, he would be fired. This interpretation of the October 18th. letter was again confirmed by the union, who also indicated, that as of October 19, 1993, the Plaintiff was no longer in the rural craft, and they no longer had any obligation toward the Plaintiff. ...

This is when the breach of contract by the USPS actually started and when the NRLCA breached its duty of fair representation. At this point the Plaintiff however, had no reason to believe that he

would be denied his maintenance craft seniority and proper pay step, or that the lawsuit would not be settled. *Plaintiffs' Response and Opposition to Defendant USPS' Motion for Summary Judgment,* pp. 4–5. The evidence, however, presents a different story. The terms of the written October 13 agreement do not, on their face, stray from the terms of the October 18 letter of which the plaintiffs complain:

> The Postal Service agrees to allow grievant to transfer to the position of an ET–9 Electronics Technician, located in Oshkosh, Wisconsin. **The grievant will report to this position by no later than November 8, 1993. The grievant will pay his own moving expenses. The seniority of the grievant in the maintenance craft will be in accordance with the provisions of Article 38—Section 3(E) of the Agreement between the United States Postal Service and the American Postal Workers Union, AFL–CIO (1990–1994); specifically, "Employees who change from one craft to another on or after June 25, 1992, shall begin a new period of seniority for preferred assignment."** The grievant must also meet the other requirements of the contract with the APWU. The grievant is not entitled to any special training for this position nor to any other special conditions of employment not called for by the collective bargaining agreement with the APWU.

The Bigsbys concede that they had possession of this document at least as early as October 18, 1993. Mr. Bigsby knew, or should have known from the express terms contained in this memorialization of the settlement agreement, that he would lose his seniority within the Rural Carrier craft and therefore any commensurate benefits, such as a higher pay step, if he accepted the settlement offer.

 In order to prevail on their claim that the NRLCA breached its duty of fair representation, the plaintiffs would have to prove that the NRLCA's conduct was "arbitrary, discriminatory, or in bad faith," and a mere showing of negligence does not state a claim in this regard. *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372, 110

S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990). In light of Mr. Bigsby's proclivity to file meritless claims with whomever will allow him, there is no evidence that the NRLCA has performed in anything but a reasonable manner in obtaining a settlement favorable to his interests in this matter.

 The plaintiffs' breach of contract claim likewise fails, for it is dependent upon its sister claim. Normally, it is the exclusive duty of the union to enforce an employee's rights under a collective bargaining agreement, and therefore an individual employee usually has no standing to enforce contractual rights arising under the collective bargaining agreement. *McNair v. USPS,* 768 F.2d 730, 735 (5th Cir.1985); *Ross v. Runyon,* 858 F.Supp. 630, 634 (S.D.Tex.1994). Because this responsibility rests upon the shoulders of the union, demonstration of a breach of the duty of fair representation is a prerequisite for an individual plaintiff to maintain an action against an employer for such a breach. *Thomas v. LTV Corp.,* 39 F.3d 611, 621 (5th Cir.1994) (referring to breach of duty of fair representation as "indispensable predicate" to maintenance of § 301 action against employer). In this case, the plaintiffs can prevail on neither. There is no evidence before this court that would lead a reasonable juror to return a verdict in the plaintiffs' favor on either of these claims. There is no genuine issue of material fact as to the plaintiffs' claims, and the defendants are entitled to the entry of a judgment as a matter of law.

## IV. EVELYN BIGSBY AS A PROPER PARTY TO THIS ACTION

 Evelyn Bigsby is named as a party to this suit, much to the confusion of the defendants. The plaintiffs have not alleged nor provided any sufficient basis of standing for Ms. Bigsby in this action. *See, e.g., Souter v. International Union,* 993 F.2d 595, 597 n. 1 (7th Cir.1993) (spouse had no standing to assert § 301 hybrid action claims); *Crandall v. Prudential Ins. Co.,* 691 F.Supp. 814, 827 (D.N.J.1988) (spouse had no standing to assert Title VII claims). Ms. Bigsby and her claims are also properly dismissed from this action for that reason.

## V. THE PLAINTIFFS' MOTIONS

█ The deadline for filing motions in this case expired on May 21, 1995. The plaintiffs did not file their instant motions until March 22, 1996, approximately nine (9) months late. They have offered no reasonable explanation for the delay, and the plaintiffs are not entitled to any additional consideration by virtue of their *pro se* status. Their tardiness alone justifies denial.

## VII. POTENTIAL SANCTIONS AGAINST THE PLAINTIFFS

█ This court grows weary of expending judicial energy upon meritless and frivolous lawsuits. Mr. Bigsby has waged a crusade against the Postal Service for several years now, and as already noted, makes his second appearance in this district with his claims. The administrative structures of the Equal Employment Opportunity Commission and the National Labor Relations Board, however, have waded through a seemingly endless stream of filings by Mr. Bigsby. None of his administrative filings have obtained him official relief[3], all of his prior claims before this court were dismissed, and all of his claims are being dismissed for multiple reasons in this action today. This court finds that the claims asserted in this cause are frivolous, for the plaintiffs have failed to show that their claims have any basis in fact or law. Had the plaintiffs been required, as *pro se* prisoner litigants are, to undergo a *Spears* hearing to determine the merit of their claims prior to the issuance of process, this action would have been dismissed as frivolous long ago. *See* 28 U.S.C. § 636(b)(1)(B); Uniform Local Rule M–4.1(b); *Spears v. McCotter,* 766 F.2d 179, 182 (5th Cir.1985). Regrettably, the defendants in this matter did not have the benefit of such a hearing, and as a consequence have undergone an additional two years of litigation.

█ *Pro se* litigants are not beyond the purview of the sanctions contained in Federal Rule of Civil Procedure 11 for the filing of

meritless and frivolous claims. The Bigsbys are bound by the same obligations as attorneys to investigate their claims, both factually and legally, to determine their merit before filing. Such an obligation ensures that judicial resources are not wasted, and that defendants are not harassed by disgruntled parties with the rigors of unnecessary litigation. As well, this court always carries with it the inherent power to sanction misconduct by the parties appearing before it. Sanctions can be monetary, such as the payment of attorneys' fees for the opposing party, or they may be injunctive. *In re Grant Anderson,* 511 U.S. 364, 365, 114 S.Ct. 1606, 1607, 128 L.Ed.2d 332 (1994); *Support Systems Int'l v. Mack,* 45 F.3d 185, 186 (7th Cir.1995); *Vinson v. Heckmann,* 940 F.2d 114, 116 (5th Cir.1991). This court, by order of United States District Judge Neal Biggers, Jr., has recently imposed such injunctive sanctions against a member of the Mississippi bar for his repeated filing of frivolous actions. *Prewitt v. Alexander,* Civil Action No. 4:94cv94–B–B (N.D.Miss. Feb. 27, 1996) (Biggers, J.) (Opinion and Order Granting Motion for Sanctions; precluding and restraining plaintiff from filing new actions in the Northern District of Mississippi without prior court approval). Therefore, this court directs the plaintiffs to provide reasons to this court why they should not be sanctioned for the filing of this litigation against these defendants. The plaintiffs are forewarned that the lack of training in law is no excuse, for they shoulder the same responsibilities regardless of whether they have hired an attorney.

### CONCLUSION

There are no genuine issues of material fact in the case at bar, and the defendants are entitled to the entry of a judgment as a matter of law on all of the plaintiffs' claims. While this court has offered discussion of several reasons for dismissal of the plaintiffs' claims, additional reasons which justify dismissal are left unmentioned. Other claims

---

**3.** Apparently, some of Mr. Bigsby's prior administrative claims other than those at issue today have been settled. Contrary to Mr. Bigsby's belief, the fact that some claims have been settled is

no reflection upon the merit of those claims. A party may wish to settle claims against them for the pure sake of avoiding the expense and time of defending those claims.

not discussed by the court in this opinion are also without merit and should properly be dismissed. As a result of all of these reasons for dismissal, this court finds the plaintiffs' claims in this cause patently frivolous, and is of the opinion that they were vexatiously brought by the plaintiffs in bad faith. This court's time and patience are finite, and numerous claims of merit await consideration in this district. The undersigned will not allow this court to become an instrument of harassment for *pro se* litigants to wield, at public expense, against whomever they feel deserves punishment by the filing of meritless claims.

A separate order in accordance with this opinion shall issue this day.

## MEMORANDUM OPINION ON MOTIONS

By memorandum opinion and order dated May 28, 1996, the undersigned granted the defendants' motions for summary judgment in this matter, dismissed this action and directed the plaintiffs to show cause why they should not be sanctioned by this court for the filing of a frivolous action. The plaintiffs have now responded to this court's directive and have additionally moved the court to reconsider various motions, i.e., motion for summary judgment, motion for an appointment of a special master, and motion to file motion for summary judgment out of time. After consideration of all the submissions of the parties in this matter, the court finds that the plaintiffs' latest motions are not well taken and the court shall deny them. Additionally, the plaintiffs have filed and continued the litigation of a frivolous matter before this court, and the undersigned shall sanction them appropriately.

This court has previously dismissed an action filed by the plaintiff Robert Bigsby. *Bigsby v. Runyon*, Civil Action No. 3:92cv13–D–D (N.D.Miss. Dec. 24, 1995) (Davidson, J.) (Memorandum Opinion and Order Granting Motions for Summary Judgment). This court's dismissal of that action was affirmed by the Fifth Circuit Court of Appeals. *Bigsby v. Runyon*, No. 95–60106 (5th Cir. Nov. 20, 1995) (Order affirming dismissal). Primarily arising from the same set of operative facts as that first action, the plaintiffs filed the present action on April 14, 1994 in the United States District Court for the Eastern District of Wisconsin. United States District Judge Terrance T. Evans, Chief Judge for the Eastern District of Wisconsin, presided over the case. Upon consideration of the defendants' motion to dismiss or transfer, Chief Judge Evans dismissed all of the plaintiffs' Title VII claims for lack of jurisdiction by order dated September 13, 1994 and transferred the action to this court. *Bigsby v. Runyon*, Civil Action No. 94–C–407 (E.D.Wis. Sept. 14, 1994) (Evans, C.J.) (Order Dismissing Title VII claims and Transferring Cause to the Northern District of Mississippi). This court, upon consideration of the various motions of the parties, dismissed this action on multiple grounds. *Bigsby v. Runyon*, 950 F.Supp. 761 (N.D.Miss.1996). Also on that date, the court stated in its memorandum opinion:

This court grows weary of expending judicial energy upon meritless and frivolous lawsuits. Mr. Bigsby has waged a crusade against the Postal Service for several years now, and as already noted, makes his second appearance in this district with his claims. The administrative structures of the Equal Employment Opportunity Commission and the National Labor Relations Board, however, have waded through a seemingly endless stream of filings by Mr. Bigsby. None of his administrative filings have obtained him official relief, all of his prior claims before this court were dismissed, and all of his claims are being dismissed for multiple reasons in this action today. This court finds that the claims asserted in this cause are frivolous, for the plaintiffs have failed to show that their claims have any basis in fact or law. Had the plaintiffs been required, as *pro se* prisoner litigants are, to undergo a *Spears* hearing to determine the merit of their claims prior to the issuance of process, this action would have been dismissed as frivolous long ago. *See* 28 U.S.C. § 636(b)(1)(B); Uniform Local Rule M–4.1(b); *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir.1985). Regrettably, the defendants in this matter did not have the

benefit of such a hearing, and as a consequence have undergone an additional two years of litigation.

*Pro se* litigants are not beyond the purview of the sanctions contained in Federal Rule of Civil Procedure 11 for the filing of meritless and frivolous claims. The Bigsbys are bound by the same obligations as attorneys to investigate their claims, both factually and legally, to determine their merit before filing. Such an obligation ensures that judicial resources are not wasted, and that defendants are not harassed by disgruntled parties with the rigors of unnecessary litigation. As well, this court always carries with it the inherent power to sanction misconduct by the parties appearing before it. Sanctions can be monetary, such as the payment of attorneys' fees for the opposing party, or they may be injunctive. *In re Grant Anderson,* 511 U.S. 364, 365, 114 S.Ct. 1606, 1607, 128 L.Ed.2d 332 (1994); *Support Systems Int'l v. Mack,* 45 F.3d 185, 186 (7th Cir.1995); *Vinson v. Heckmann,* 940 F.2d 114, 116 (5th Cir.1991). This court, by order of United States District Judge Neal Biggers, Jr., has recently imposed such injunctive sanctions against a member of the Mississippi bar for his repeated filing of frivolous actions. *Prewitt v. Alexander,* Civil Action No. 4:94cv94–B–B (N.D.Miss. Feb. 27, 1996) (Biggers, J.) (Opinion and Order Granting Motion for Sanctions; precluding and restraining plaintiff from filing new actions in the Northern District of Mississippi without prior court approval). Therefore, this court directs the plaintiffs to provide reasons to this court why they should not be sanctioned for the filing of this litigation against these defendants. The plaintiffs are forewarned that the lack of training in law is no excuse, for they shoulder the same responsibilities regardless of whether they have hired an attorney.

*Bigsby v. Runyon,* 950 F.Supp. 761, 768 (N.D.Miss.1996). This court went on to direct the plaintiffs to show cause to this court why they should not be sanctioned for the filing of this action.

The plaintiffs have now responded and argue that this court's opinion and order of May 9 was in error. Since that order was in error, they continue, this action is not frivolous. The plaintiffs then discuss a litany of proffered reasons why this court's May 9 order was in error, including various accusations of impropriety by the undersigned. None of the proffered reasons warrant the reconsideration of this court's May 9 order or of motions already ruled upon, and this court shall not reconsider them.

This court has previously warned the plaintiffs of the potential for sanctions, either monetary or injunctive. The plaintiffs' only proffered reason for not imposing sanctions upon them is their contention that this court is incorrect in its determination of the frivolous nature of their claims. As already noted, this court finds no appropriate justification for reconsideration of its May 9 order and will not disturb it, including this court's determination of frivolity.

The defendants have requested that the court impose a quite creative sanction involving required community service, jail time for contempt, and a $10,000.00 fine. After careful consideration, this court is of the opinion that imposing monetary sanctions against the plaintiffs would not adequately serve to ensure that the Bigsbys will not file frivolous actions in the future. The Bigsbys have even foreshadowed the continuation of the frivolous claims presently before the court, even after this court's warnings:

> By forcing the plaintiff to file this answer, by leaving issues unresolved, by applying the wrong facts, wrong case law, and showing overt hostility toward the Plaintiff[s], this Court has, but guaranteed more years of litigation and expense, to the detriment of all parties, and the Courts.

Plaintiffs' Answer to Show Cause Order, p. 8. Therefore, instead of the imposition of monetary sanctions or of a creative one like that proposed by the defendants, this court will bar them from filing new actions with this court without an order from an appropriate federal judicial officer certifying that the claims are not frivolous. Further, with the exception of notices of appeal, the plaintiffs

shall be likewise barred from filing any new matters in this action. This sanction will help ensure that the court and other parties are not burdened with meritless actions, while at the same time permitting any non-frivolous claims of the plaintiffs to go forward for appropriate consideration.

A separate order in accordance with this opinion shall issue this day.